IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| DAVID RYAN WALKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 325-034 |
| | ) | |
| WARDEN KENDRICK JACKSON; | ) | |
| CERT. SGT. WRIGHT; GEORGIA | ) | |
| DEPARTMENT OF CORRECTIONS; | ) | |
| SGT. APRIL BROWN; and WARDEN | ) | |
| ANDREW McFARLANE, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**O R D E R**

_____

Plaintiff, incarcerated at Macon State Prison in Oglethorpe, Georgia, has submitted to the Court for filing a complaint brought pursuant to 42 U.S.C. § 1983, concerning events alleged to have occurred at Telfair State Prison in Helena, Georgia, and Macon State Prison. He is proceeding *pro se* and *in forma pauperis* ("IFP"). Because he is proceeding IFP, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

I.      **BACKGROUND**

In his complaint, Plaintiff names as Defendants:  (1) Warden Kendrick Jackson; (2) CERT. Sgt. Wright; (3) Georgia Department of Corrections; (4) Sgt. April Brown; and (5)

Warden Andrew McFarlane. (Doc no. 1, pp. 1-3, 16.) Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

Between September 14 and September 18, 2024, while at Telfair State Prison, Plaintiff's cellmate was Inmate Eric Whitehead, who abused, tortured, and burned Plaintiff. (Id. at 4, 12, 14.) Starting on September 14, Inmate Whitehead questioned Plaintiff about his charges and called him a child molester. (Id. at 12.) Whitehead then "trashed" the cell, lit a fire, burned Plaintiff's clothes and property, and told Plaintiff, "we both gonna die in here." (Id.) Plaintiff screamed for help throughout the day, but none came. (Id.)

On September 15, Plaintiff accessed a phone and called a friend named Sarah Shaw and his father, Douglas Walker. (Id.) Plaintiff informed them of the danger Inmate Whitehead posed to him. He asked Ms. Shaw to contact the prison and request Plaintiff be removed from the cell. (Id.) Ms. Shaw emailed Defendant Warden McFarlane, Defendant Warden Jackson, and Georgia Department of Corrections ("GDC") official Mr. Holt to make this request, providing them with "subjective knowledge that [Plaintiff] was in danger and need[ed] to be removed from that cell." (Id.) Ms. Shaw has record of these emails. (Id.)

During the call, Inmate Whitehead lied to Ms. Shaw and Plaintiff's father by yelling that Plaintiff was "lying and high on drugs." (Id.) While Plaintiff was on the phone, Inmate Whitehead lit Plaintiff's blanket on fire and threw it on him, burning Plaintiff's forearms. (Id.) Plaintiff shouted for help, and Defendant Jackson came to the cell. (Id.) Defendant Jackson told Plaintiff to "shut the f**k [sic] up" and told Inmate Whitehead to "tie [Plaintiff] up and break [his] jaw." (Id.) Defendant Jackson left without helping Plaintiff. (Id.) Plaintiff continued shouting for help but no one came, and Plaintiff was left in a burning cell with badly burned forearms. (Id.)

On September 16, Plaintiff handed a grievance to Counselor Kirby requesting protective custody. (Id. at 13.) The grievance detailed the danger Inmate Whitehead posed to Plaintiff and Plaintiff's injuries. (Id.) Plaintiff showed Counselor Kirby his injures and burnt cell and verbally requested Counselor Kirby's help and relocation to another cell. (Id.) Counselor Kirby said nothing, gave Plaintiff a grievance receipt, and left. (Id.) As of March 1, 2025, Plaintiff has had no opportunity to appeal this grievance despite his attempts to do so through various channels. (Id. at 14-15.)

Between September 16 and September 18, Defendant Brown came to Plaintiff's cell several times. (Id. at 13.) During these times, Plaintiff requested Defendant Brown's help. (Id.) He showed her his injures, explained the danger posed to him, and explained Inmate Whitehead was burning and beating him. (Id.) Each time, Defendant Brown told Plaintiff there was nothing she could do and left him in the cell with Inmate Whitehead. (Id.)

On September 16 or 17, Defendant Wright took Plaintiff from his cell to have his burns treated. (Id.) Plaintiff begged Defendant Wright to remove him from the cell with Inmate Whitehead. (Id.) Plaintiff told him Inmate Whitehead burned him and was continuing to light fires and burn his property. (Id.) Defendant Wright refused to help Plaintiff and placed him back in the cell following treatment. (Id.) Plaintiff sent four requests for his medical records from this treatment but has received no response. (Id.)

Also on September 16 or 17, Plaintiff received a "counselor's response" from Counselor Hill. (Id.) Counselor Hill told Plaintiff she was aware of his burns and his need for protective custody. (Id.) She further told Plaintiff to only speak to her and to "do it by the process." (Id.)

3

Between September 14 and 18, Inmate Whitehead lit multiple fires.  (Id. at 14.) Plaintiff tried to extinguish the fires, but Inmate Whitehead pushed or hit him each time he tried.  (Id.)  Plaintiff would then retreat to the top bunk and scream for help.  (Id.)  Other inmates told Plaintiff to stop screaming and begged Inmate Whitehead to kill Plaintiff.  (Id.) Inmate Whitehead did not kill Plaintiff because the other inmates did not provide him with a knife.  (Id.)  At an undisclosed point, Defendant Jackson removed the lock from Plaintiff's and other inmates' cells.  (Id.)  Plaintiff heard other inmates say they had "bags of feces" they were going to force him to eat.  (Id.)

On September 18, Inmate Whitehead lit another fire, and the cell filled with black smoke.  (Id.) Plaintiff went to the window to breathe.  (Id.)  While Plaintiff was at the window, Inmate Whitehead came up behind him and began to choke him.  (Id.)  In response, Plaintiff fought back and killed Inmate Whitehead in self-defense.  (Id.)

The same day, GDC Special Agent Nate Bigby interviewed Plaintiff.  (Id. at 12-13.) Agent Bigby recorded this interview, (id. at 14), and took photos of Plaintiff's cell and injuries, (id. at 12).  During the interview, Plaintiff was tested for drugs, and the results were negative. (Id. at 16.)  As evidence of Plaintiff's self-defense, Plaintiff gave Agent Bigby the grievance receipt provided by Counselor Kirby and counselor's response provided by Counselor Hill. (Id. at 13-14.)  Agent Bigby placed both into a paper bag.  (Id. at 14.)

The night of September 18, Plaintiff was placed in a "one-man cell," where he was housed until October 7.  (Id. at 15.)  The first day, Plaintiff was "made to get completely naked" and sleep on concrete while still covered in blood, bruises, and soot from Inmate Whitehead's attacks.  (Id.)  Unspecified prison officials retaliated against Plaintiff by depriving him of his personal property during this time, including his legal material.  (Id.)  Once, Defendant Jackson

came to the cell, laughed, and asked Plaintiff, "Walker, where are your clothes at?"  (Id.)
Defendant Jackson then "tried to come in on [Plaintiff]," so Plaintiff ran to the window and
screamed.  (Id.)  Defendant Jackson opened the flap on the cell door, sprayed a can of mace
inside, and told Plaintiff to "get [his] stupid a**  off the window."  (Id. at 16.)  Defendant
Jackson "has a hit on [Plaintiff] and wants [him] dead."  (Id. at 14.)  While Plaintiff was in this
cell, other inmates would "pop their doors late at night" and enter Plaintiff's cell.  (Id. at 15.)
Plaintiff would "yell[] for help to survive and hinder them."  (Id.)

       On October 8, Plaintiff was transferred to Macon State Prison.  (Id.)  On October 11,
Lt. Branch served Plaintiff a disciplinary report for causing the death of an inmate.  (Id. at 14.)
On October 14, Lt. Branch held "court" on the disciplinary report in Plaintiff's cell.  (Id.)
Plaintiff pleaded not guilty and appealed the disciplinary report to Defendant McFarlane
through Counselor Boyner.  (Id.)  As of March 1, 2025, Plaintiff received no response to this
appeal.  (Id.)

       In mid-October, Plaintiff appealed his September 16 grievance through Counselor
Boyer.  (Id. at 15.)  On November 18, 2024, Plaintiff sent letters to Defendant McFarlane,
Defendant Jackson, Agent Bigby, and the GDC Office of Professional Standards.  (Id.)  The
letters asked why they were denying Plaintiff's right to due process and purposefully
preventing his grievance and disciplinary report appeals from proceeding.  (Id.)  In the letters
to Agent Bigby and the GDC Office of Professional Standards, Plaintiff requested "the crime
scene photos and any evidence."  (Id.)  Plaintiff received no response to these letters.  (Id.)

       On December 17, 2024, Plaintiff was placed on the "Tier II program" for causing the
death of an inmate.  (Id.)  On December 19, Plaintiff appealed this decision through Counselor

Boyer.  (Id.)  On February 10, 2025, Plaintiff sent a second letter to the GDC Office of Professional Standards but received no response.  (Id.)

For relief, Plaintiff requests protective custody or transfer to another prison and monetary damages.  (Id. at 5.)

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds Plaintiff has arguably stated a viable excessive force claim against Defendant Warden Kendrick Jackson.  See Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).  The Court also finds Plaintiff has arguably stated a viable claim for deliberate indifference to his safety against Defendants Warden Kendrick Jackson, CERT. Sgt. Wright, Sgt. April Brown, and Warden Andrew McFarlane.  See Wade v. McDade, 106 F.4th 1251, 1262 (11th Cir. 2024) (en banc); Lane v. Philbin, 835 F.3d 1302, 1307-08 (11th Cir. 2016).  Lastly, the Court finds Plaintiff has arguably stated a viable claim for medical deliberate indifference against Defendants Sgt. April Brown and Warden Kendrick Jackson.  See Wade, 106 F.4th at 1262; see also McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) ("Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours . . . ."); Brown v. Hughes, 894 F.2d 1533, 1538 (11th Cir. 1990) ("[A]n unexplained delay of hours in treating a serious injury states a prima facie case of deliberate indifference.")

In a companion Report and Recommendation, the Court recommends dismissal of Defendants Georgia Department of Corrections, as well as Plaintiff's due process claims, claims concerning deprivation and loss of personal property, claims concerning prison regulations and grievance processing against Defendants McFarlane and Jackson, and conspiracy claims against Defendants Jackson and Brown.

## II.    INSTRUCTIONS

**IT IS HEREBY ORDERED** that service of process shall be effected on Defendants Warden Kendrick Jackson, CERT. Sgt. Wright, Sgt. April Brown, and Warden Andrew McFarlane.  The United States Marshal shall mail a copy of the complaint, (doc. no. 1), and this Order by first-class mail and request that each Defendant waive formal service of the summons. Fed. R. Civ. P. 4(d).  Individual defendants have a duty to avoid unnecessary costs of serving the summons, and if a defendant fails to comply with the request for waiver, the defendant must bear the costs of personal service unless good cause can be shown for failure to return the waiver.  Fed. R. Civ. P. 4(d)(2).  A defendant whose return of the waiver is timely does not have to answer the complaint until sixty days after the date the Marshal mails the request for waiver.  Fed. R. Civ. P. 4(d)(3).  However, service must be effected within ninety days of the date of this Order, and the failure to do so may result in the dismissal of any unserved defendant or the entire case.  Fed. R. Civ. P. 4(m).  Plaintiff is responsible for providing sufficient information for the Marshal to identify and locate each Defendant to effect service.

**IT IS FURTHER ORDERED** Plaintiff shall serve upon the defendants, or upon their defense attorney(s) if appearance has been entered by counsel, a copy of every further pleading or other document submitted to the Court.  Plaintiff shall include with the papers to be filed a certificate stating the date a true and correct copy of any document was mailed to the defendant or their counsel.  Fed. R. Civ. P. 5; Loc. R. 5.1.  Every pleading shall contain a caption setting forth the name of the court, the title of the action, and the file number.  Fed. R. Civ. P. 10(a).  Any paper received by a District Judge or Magistrate Judge that has not been properly filed with the Clerk of Court or that fails to include a caption or certificate of service will be returned.

It is Plaintiff's duty to cooperate fully in any discovery that may be initiated by the defendants. Upon being given at least five days' notice of the scheduled deposition date, Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath and solemn affirmation, any question that seeks information relevant to the subject matter of the pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, including dismissal of this case. The defendants shall ensure Plaintiff's deposition and any other depositions in the case are taken within the 140-day discovery period allowed by this Court's Local Rules.

Plaintiff must pursue this case; if Plaintiff does not press the case forward, the Court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Loc. R. 41.1. If Plaintiff wishes to obtain facts and information about the case from the defendants, Plaintiff must initiate discovery. See generally Fed. R. Civ. P. 26 through 37 (containing the rules governing discovery and providing for the basic methods of discovery). Plaintiff should begin discovery promptly and complete it within four months after the filing of the first answer of a defendant named in the complaint screened herein.

Interrogatories are a practical method of discovery for *pro se* litigants. See Fed. R. Civ. P. 33. Interrogatories shall not contain more than twenty-five questions. Id. Plaintiff must have the Court's permission to propound more than one set of interrogatories to a party. Discovery materials should not be filed routinely with the Clerk of the Court; exceptions include when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. If Plaintiff wishes to file a motion to compel pursuant to Fed. R. Civ. P. 37, he should first contact the attorney for the defendant and try to work out the problem; if Plaintiff proceeds with the motion to compel, he

should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery.  Loc. R. 26.5.

Plaintiff must maintain a set of records for the case.  If papers are lost and new copies are required, these may be obtained from the Clerk of the Court at the standard cost of fifty cents per page.

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve their response to the motion within fourteen days of its service.  "Failure to respond shall indicate that there is no opposition to a motion."  Loc. R. 7.5.  Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that there is no opposition to the defendant's motion and grant the dismissal.

A response to a motion for summary judgment must be filed within twenty-one days after service of the motion.  Loc. R. 7.5, 56.1.  A failure to respond shall indicate that there is no opposition to the motion.  Loc. R. 7.5.  Furthermore, each material fact set forth in a defendant's statement of material facts will be deemed admitted unless specifically controverted by an opposition statement.  Should a defendant file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine issue as to any material fact in this case.  That burden cannot be carried by reliance on the conclusory allegations contained within the complaint.  Should a defendant's motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest the defendant's statement of the facts.  Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine issue for trial, the consequences are these:  any factual assertions made in the defendant's affidavits will be accepted as true and summary judgment will be entered against Plaintiff pursuant to Fed. R. Civ. P. 56.

**While this action is pending, Plaintiff shall immediately inform this Court and opposing counsel of any change of address. Failure to do so will result in dismissal of this case.**

SO ORDERED this 7th day of July, 2025, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA